**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOQUITA CALDWELL,

    Plaintiff,

v.

MICHAEL J. ASTRUE,

    Defendant.

No. C 07-06356 CRB

**ORDER & MEMORANDUM**

This social security appeal presents a narrow question: whether the Administrative Law Judge's (ALJ) determination that Plaintiff failed to meet the "durational requirement" of 20 C.F.R. § 416.909 is supported by substantial evidence. For the reasons set forth below the Court concludes that substantial evidence does support the ALJ's decision. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED; Defendant's cross-motion for summary judgment is GRANTED.

**BACKGROUND**

Plaintiff Joquita Caldwell filed an application for Supplemental Security Income Benefits on December 10, 2004, alleging disability on the basis of "[m]igraine headaches, weak legs, passout and fatigue." TR 72. The Social Security Administration denied the application initially on July 8, 2005, and on reconsideration, on November 28, 2005. TR 22-23. Plaintiff then filed for and was granted a request for a hearing before an

Administrative Law Judge. TR 49. On December 6, 2006, a hearing was held in Oakland, California. TR 210-44. Plaintiff was represented by an attorney and testified on her own behalf. A vocational expert testified at the request of the ALJ. Following the hearing, the ALJ held the record open for "receipt and admission of additional evidence" to be considered. TR 18. In a decision dated February 13, 2007, the ALJ denied the claim, finding that Plaintiff had no severe impairments. TR 15-21. The ALJ's decision became the final decision of the Commissioner when the Appeals council denied Plaintiff's request for review. TR 5-7. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The court's jurisdiction is limited to determining whether Plaintiff's denial of benefits is supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d. At 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Id.; Magallenes, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1040. That is, where the medical evidence presented would permit a reasonable mind to make a finding of either disability or no disability, the Court must affirm the decision actually made. See Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

## DISCUSSION

In determining whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 416.920. The sequential analysis is unlike any balancing test, as each step is analyzed on its own. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity; if the claimant is engaged in

2

substantial gainful activity, the claim will be denied. If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step, which asks if the claimant has a severe impairment or combination of impairments that lasted or is expected to last for a period of twelve months or end in death. See 20 C.F.R. § 416.909. If the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the condition as outlined in the Listings of Impairments in Appendix 1 of the Regulations; if the claimant does not have such a condition, the fourth step asks if the claimant is capable of performing his past relevant work. If the claimant is not capable of performing his past relevant work, the fifth step asks if the claimant has a residual functional capacity, that is, whether the claimant is capable of performing other work which exists in substantial numbers in the national economy, despite the claimant's limitations.

In this case Plaintiff denied having worked since her alleged disability onset date of December 10, 2004, and the ALJ found no evidence to contradict her claim, thus Plaintiff had not been engaged in substantial gainful activity since she filed for disability. At the second step of the sequential evaluation, the ALJ concluded that Plaintiff "has no severe impairments which have lasted or could be expected to last for a continuous period of 12 months and which significantly limit her ability to perform basic work activities." TR 21. Thus, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments.

Plaintiff contends that the ALJ's conclusion that her chronic headaches and depression are not severe impairments was based on an erroneous legal standard and lacks support in substantial evidence in the record as a whole.

I. Durational Requirement

An individual is disabled within the meaning of the Social Security Act when she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. § 416.909. The claimant bears the burden of establishing a prima facie case of disability. See Drouin v.

Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  This burden requires the claimant to make out a case both that she has an impairment listed in the regulations, and that she has met the duration requirement.  See 20 C.F.R. § 416.920(d).

In his ruling, the ALJ did not find that the impairments were harmless or not debilitating or taxing, only that the impairments did not meet the durational requirement of 42 U.S.C. 423(d)(1)(A) and 20 C.F.R. § 416.909.  This Court's review is limited to determining whether there is substantial evidence in the record that supports the conclusion that Plaintiff's impairment does not meet the durational requirement.

II. Substantial Evidence

The ALJ based his conclusion that Plaintiff did not satisfy the duration requirement on: (1) the Plaintiff's treatment history; (2) the opinions of several doctors; and (3) the finding that Plaintiff's hearing testimony – specifically, that Plaintiff was and had been receiving continuous treatment at Highland Hospital during 2005 and 2006 – was not supported by the evidence.

**A. Past Continuous Treatment**

Plaintiff's onset date was determined to be December 10, 2004, meaning that to show a severe impairment, Plaintiff must have been or be expected to be impaired for any 12 month period after the onset date.  42 U.S.C. 423(d)(1)(A).  The record reveals that Plaintiff received the following treatment: from December 2004 to February 2005 – a three month period – Plaintiff was seen at the James A. Watson Wellness center for muscle spasms, headaches, and leg pain that began after a hysterectomy that occurred in approximately 1989, and she was prescribed the painkiller Vicodin.  See TR 167-68.

In April of 2005, Plaintiff's primary physician referred her to a neurologist, Dr. John Mark Friedberg, for an evaluation due to "disabling headaches with nausea and vomiting as well as weakness in her legs." TR 172.  The neurologist concluded that Plaintiff's symptoms resulted from Plaintiff's intake of various medications and caffeine, and recommended that Plaintiff limit her dosage of particular prescriptions and eliminate caffeine from her diet.  TR 174.

4

1    According to the record before the ALJ, Plaintiff did not go of her own accord to a
2 doctor again until January 29, 2006. At that time, Plaintiff visited the emergency room of the
3 Alameda County Medical Center's Highland Campus, complaining of generalized weakness
4 accompanied by nausea and vomiting. See TR 196. After physicians conducted an initial
5 assessment, Plaintiff apparently got tearful and left the ER against doctor's advice. See TR
6 199. Plaintiff again visited the Highland hospital in March of 2006, complaining of
7 cramping and migraine. See TR 202.

8    After a gap of nearly a year in the record, in February 2007, Plaintiff's treating
9 physician certified that Plaintiff was being treated for chronic pain syndrome and depression,
10 going to physical therapy and psychotherapy, as well as taking pain medications and
11 antidepressants. The physician also noted that Plaintiff needs some help to accomplish
12 activities of daily living and house hold work. See TR 207.

13    Other than the preceding evidence, there is no evidence in the record of medical
14 treatment other than two consultative examinations that Plaintiff underwent at the request of
15 the Social Security Administration and not of her own accord, one in late May, 2005 and the
16 other in early June, 2005. Thus, the record supports the conclusion that there was a nine-
17 month gap – between April 2005 and late January 2006 – in between self-initialized visits to
18 a physician or a hospital. The ALJ reasonably relied on this gap in treatment in concluding
19 that Plaintiff did not bear her burden of proving that she suffered from impairments that ever
20 lasted for a continuous period of twelve months. See Krumpelman v. Heckler, 767 F.2d 586,
21 589 (9th Cir. 1985).

### B. Conflicting Evidence

23    The plaintiff argues that she sought emergency room attention for headaches at
24 Highland Hospital and is currently under regular treatment there for chronic pain syndrome
25 and depression. See TR 207. During the hearing, Plaintiff claimed that she visits a physician
26 at Alameda County Medical Center's Highland Campus once a month. See TR 215. But as
27 the ALJ observed, Plaintiff failed to submit records that would support her contention. As

5

1 the record stands, there is evidence only that Plaintiff sought treatment at Highland on two
2 occasions: once on January 29, 2006, TR 196, and once on March 27, 2006, TR 202.

3     During the Hearing, the ALJ told Plaintiff he would leave the record open for thirty
4 days after the trial to allow the Plaintiff to rectify the conflict in the record.  See TR 249.  The
5 ALJ even told Plaintiff, and her counsel that he "need[ed] those records to make any kind of
6 a decision."  TR 249.  Plaintiff failed to supplement the record, and the ALJ reasonably
7 resolved the discrepancy by relying on the written record, rather than Plaintiff's testimony.
8 Resolving questions of credibility is a function solely for the ALJ.  See Sample v. Schweiker,
9 694 F.2d 639, 642 (9th Cir. 1982).  The Court cannot say that the ALJ unreasonably resolved
10 the issue of credibility against Plaintiff's interests.  Accordingly, the Court must agree that
11 there is substantial evidence in the record to support the conclusion that Plaintiff's headaches
12 and depression did not last for more than twelve continuous months.

### C. Likelihood of Impairment Lasting Twelve Months in Future

14     Based on the opinions of legal experts in the record, the ALJ concluded that Plaintiff
15 had no impairments that could be expected to last for a continuous period of twelve months.
16 As noted above, a neurologist consulted by Plaintiff diagnosed her headaches as caused by
17 prescription medication and caffeine.  The neurologist cut Plaintiff's prescription dosage in
18 half and ordered Plaintiff off caffeine, and was hopeful that such an approach would result in
19 significant improvement of her headaches.  See TR 174.  Plaintiff then did not see a
20 physician on her own initiative for approximately nine months.

21     Plaintiff was also examined by two Social Security Administration physicians. In late
22 May 2005, Plaintiff underwent a state agency consultative psychiatric evaluation by Dr.
23 Stefan Lampe.  TR 175-77.  Dr. Lampe found that Plaintiff "should be able to withstand the
24 stress and pressures associated with an eight hour work day on an ongoing basis."  TR 177.
25 Dr. Lampe found no restrictions on Plaintiff's ability to interact with others, understand and
26 carry out simple and complex instructions, deal with the public, or maintain concentration for
27 two hour increments.  TR 177.

28

1    Plaintiff then underwent a state agency consultative internal medicine evaluation in early June 2005 by Dr. Rebecca Wind. Dr. Wind examined Plaintiff and despite noting the presence of migraine headaches, found "no functional capacity limitations on a physical basis." TR 179.

The Ninth Circuit has held that opinions of doctors giving independent examinations constitute substantial evidence. See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, both Dr. Lampe and Dr. Wind provided their independent assessments that Plaintiff's condition did not impose substantial limitations on Plaintiff. Further, Plaintiff's own neurologist was hopeful that Plaintiff could reduce the impact of her migraines by taking proactive steps. These three conclusions all provide substantial evidence for the ALJ's conclusion that Plaintiff's headaches and depression are not likely to last for a continuous period of twelve months in the future.

## CONCLUSION

The ALJ properly relied on Plaintiff's treatment record to conclude that Plaintiff did not have any impairment that lasted for a continuous period of twelve months. The ALJ also properly relied on the medical evidence in the record to conclude that Plaintiff does not have an impairment that can be expected to last for twelve months. The gaps in Plaintiff's treatment history – in combination with the medical opinion that Plaintiff is not substantially limited by her alleged impairments – provide more than a scintilla of evidence supporting the ALJ's decision. Therefore, the plaintiff's Motion for Summary Judgment is DENIED; the defendant's cross-motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: June 26, 2008                                CHARLES R. BREYER
                                                    UNITED STATES DISTRICT JUDGE